# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

RESURRECTION HOUSE MINISTRIES,
INC.,

    Plaintiff,

    v.

CITY OF BRUNSWICK, et al.,

    Defendants.

CASE NO. 2:23-cv-117

## ORDER

Before the Court are a motion to dismiss filed by Defendant Neal Jump, the Sheriff of Glynn County, Georgia, dkt. no. 28, and a motion to dismiss filed by Defendants City of Brunswick, Georgia; Mayor Cosby Johnson; Brunswick City Commissioners Julie Martin, John Cason, III, Felicia Harris, and Kendra Rolle; Brunswick City Manager Regina McDuffie; Brunswick Police Department Chief Kevin Jones; and Brunswick Building Official Christopher Jones (collectively, the "City Defendants"), dkt. no. 24. Both motions seek dismissal of Plaintiff Resurrection House Ministries, Inc.'s (hereinafter "RHM") amended complaint. Dkt. No. 18. The parties have fully briefed the motions and participated in oral argument before the Court, dkt. nos. 26, 30, 31, 33, 41, 43, and the motions

are ripe for review.  For the reasons set forth below, the motions to dismiss are **GRANTED in part** and **DENIED in part**.

BACKGROUND

Plaintiff RHM initially brought this civil rights action against the City Defendants, Sheriff Jump, and Does 1 through 20. Dkt. No. 1.  This case arises out of RHM's operation of "an emergency temporary sanctuary" for unhoused individuals located in Brunswick, Georgia. Dkt. No. 18 ¶ 24. RHM operated the shelter at St. John Missionary Baptist Church (hereinafter "the Church") in downtown Brunswick. Id. RHM claims that, shortly after it began operating, Defendants unconstitutionally "raided" the Church in violation of the First, Fourth, Fifth, and Fourteenth Amendments, as well as the Religious Land Use and Institutionalized Person Act (RLUIPA). See generally Dkt. No. 18.

**I.   Factual Background**

At this juncture in the suit, the Court is required to accept as true the factual allegations in the Complaint. If the case proceeds, the parties will have the opportunity to conduct discovery and establish the actual facts. For now, the Court must accept the facts as alleged by Plaintiff which are as follows.

Before RHM began operating the shelter at the Church, another "homeless resource center," The Well, tended to Brunswick's homeless population. Dkt. No. 18 ¶ 19. According to RHM, Defendant City of Brunswick (hereinafter "the City") "waged a relentless

2

effort to close The Well and remove the homeless from [] city limits" since The Well opened in 2015. Id. ¶ 20. This "relentless effort" reached a crescendo on April 21, 2023 Plaintiff alleges, when "the City issued a letter closing The Well for 65 days." Id. ¶ 21. On April 22, 2023, RHM responded to The Well's closure by leasing space from the Church "to provide an emergency temporary sanctuary" for the displaced homeless population. Id. ¶ 24.

Plaintiff alleges that on April 24, 2023, "without a warrant, a court order, or any other authority, Defendant [Police Chief K.] Jones ordered RHM . . . to vacate the Church building within 24 hours or risk arrest." Id. ¶ 27. The following day, Defendants Police Chief K. Jones, Building Official C. Jones, and Sheriff Jump "invaded the Church without warrant or other court order, and illegally ordered the Church's building vacated within 10 minutes at the risk of arrest." Id. ¶ 28. Although RHM's CEO, Pastor Small, denied the officers entry to the Church, Defendant Police Chief K. Jones allegedly ignored that denial and, according to Plaintiff, "surreptitiously opened the Church's back door," admitting the other Defendants. Id. ¶¶ 29-30.

According to RHM, "Defendants [] evicted the Church's occupants, boarded up the Church, and posted 'No Entry' notices on the structure." Id. ¶ 33. RHM staff and guests were "[f]aced with the threat to 'get out or be arrested'" and, according to Plaintiff only vacated the Church premises to avoid arrest. Id. ¶ 35.

Defendant Police Chief K. Jones later "issued a Summons and Accusation" to Pastor Small for an alleged violation of the City's "Urban Camping Ordinance."[1] Id. ¶ 36. RHM claims that Defendants' placement of "No Entry" signs and "illegal plywood barriers" made the Church's physical structure unusable. Id. ¶ 50. Therefore, RHM "opened [a] temporary shelter outside the Church's sanctuary" two days after the "raid" of the Church.[2] Id. ¶ 38. The next day, Defendant Building Official C. Jones notified RHM "that the tent on the Church's property violated" § 23-25-5(b) of the Brunswick City Code[3] and "ordered the removal of the carport and associated items . . . by April 28, 2023, at 12:00 P.M. or risk a citation to appear in Municipal Court." Id. ¶¶ 45, 46. RHM did not comply, and Pastor Small was issued a Municipal Court Summons "for a non-permitted meeting in a tent or other temporary structure" in violation of § 23-25-5(b). Id. ¶ 47. The Brunswick Municipal Court later dismissed that citation. Id. ¶ 48.

After these actions, the City allegedly "rejected RHM's permit applications to perform the necessary compliance work on the Church building" and continued to deny RHM access to the

---

[1] The Urban Camping Ordinance can be found at City of Brunswick Code of Ordinances § 16-92, *et seq*.

[2] Prompted by a thunderstorm, RHM later replaced the temporary shelter with a "more substantial portable carport." Id. ¶ 39.

[3] Section 23-25-5(b) provides: "The building official is authorized to issue a temporary certificate of occupancy for . . . [r]eligious meeting in a tent or other temporary structure . . . for a period not to exceed 60 days."

property. Id. ¶ 49. On September 20, 2023, RHM sent a letter to the City demanding "removal of the illegal plywood barriers and 'No Entry' posters so" the building could be inspected. Id. ¶ 50. The City did not respond. Id. ¶ 51. Instead, the City filed a nuisance action in Glynn County Superior Court (hereinafter "the Nuisance Proceeding"),[4] seeking "a temporary and permanent injunction against Pastor Small and the Church." Id. ¶ 52.

## II.  Procedural History

On October 6, 2023, the Glynn County Superior Court granted the City's request for an interlocutory injunction and directed RHM to: (1) remove all property from the Church building, parking lot, and surrounding areas; (2) remove the tent structure from the parking lot; (3) remove the porta-potty(s); and (4) remove the temporary storage unit. Id. ¶ 54; see also Dkt. No. 24-3 at 1–3 (copy of order granting the City's request for an interlocutory injunction). "The Superior Court [then] denied RHM's request for a certificate of immediate review of the interlocutory injunction." Dkt. No. 18 ¶ 55. Following that decision, RHM filed its initial complaint with this Court.[5] See Dkt. No. 1.

---

[4] The Glynn County action is case number CE23-01046 and captioned "City of Brunswick, Georgia v. Resurrection House Ministries, Inc., & St. John Missionary Baptist Church." See generally Dkt. No. 24-3.

[5] Later, on June 3, 2024, the Glynn County Superior Court issued an order granting the City's request for a permanent injunction against RHM. See Dkt. No. 42-1.

After the initial complaint was filed, Defendant Sheriff Jump and the City Defendants moved for a more definite statement, dkt. nos. 11, 12, and the Court granted those motions, dkt. no. 17. Thereafter, RHM filed an amended complaint, adding as defendants Glynn County and County Commissioners Allen Booker, Bo Clark, Cap Fendig, Wayne Neal, Walker Rafolski, David Sweat, and Sammy Tostensen (collectively, the "County Defendants"). Dkt. No. 18.Based on the record, Plaintiff has not served the County Defendants, and they have not appeared in this action.

In response to the Amended Complaint, the City Defendants filed a motion to dismiss. Dkt. No. 24. RHM filed a response, dkt. no. 26, and the City Defendants filed a reply, dkt. no. 30. Defendant Jump initially filed an answer to the amended complaint, dkt. no. 21, and later, he filed a motion to dismiss, dkt. no. 28. RHM responded to Defendant Jump's motion, dkt. no. 31, and Defendant Jump filed a reply, dkt. no. 33. RHM later filed motions for an extension of time to file supplemental responses to both motions to dismiss. Dkt. Nos. 37, 38. The Court granted those motions, dkt. nos. 39, 40, but RHM never filed supplemental responses. Instead, the City Defendants filed a supplemental brief in support of their motion to dismiss, dkt. no. 41, and therein, the City Defendants included a transcript of the Glynn County Superior Court hearing as to the City's request for an

interlocutory injunction, dkt. no. 41-1. The Court heard oral argument on both motions to dismiss on June 5, 2024. Dkt. No. 43.

## LEGAL STANDARD

To survive a Rule 12(b) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, the Court must accept as true the allegations set forth in the complaint, drawing all reasonable inferences in the light most favorable to the plaintiff. See Twombly, 550 U.S. at 555-56. But a complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. See Iqbal, 556 U.S. at 678 (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555).

## DISCUSSION

Both motions to dismiss feature the same two arguments for dismissal. And both arguments hinge on this suit's relation to the Nuisance Proceeding in Glynn County Superior Court. First, Defendants argue RHM's RLUIPA claim is barred by the Anti-Injunction Act. Second, Defendants argue RHM's § 1983 claims (and the RLUIPA claim if the Court finds it is not barred by the Anti-Injunction Act) warrant abstention under Younger v. Harris, 401 U.S. 37 (1971). The Court takes each argument in turn.

7

I.   **RHM's RLUIPA claim is barred by the Anti-Injunction Act.**

In Count One of its Amended Complaint, RHM seeks "declaratory and injunctive relief under [RLUIPA]." Dkt. No. 18 at 11. RHM asks the Court to issue an injunction declaring Defendants' actions violative of RLUIPA and allowing RHM to continue operating its temporary shelter at the Church. Id. ¶¶ 62-63. Defendants assert that any injunctive relief sought by RHM would "nullify[] the injunction entered by the Glynn County Superior Court" in the Nuisance Proceeding, which required RHM to remove all property from the Church and substantially limited operation of the temporary shelter. Dkt. No. 24 at 8. Defendants thus argue that RHM's RLUIPA claim is barred by the Anti-Injunction Act. Id.

According to the Anti-Injunction Act, federal courts "may not grant an injunction to stay proceedings in a State court." 28 U.S.C. § 2283. "[T]he Act is an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act." Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 630 (1977). Adhering to those exceptions, a federal court may issue an injunction enjoining state court proceedings only when the injunction: (1) has been "expressly authorized by Act of Congress," (2) is "necessary in aid of [the federal court's] jurisdiction," or (3) is needed to "protect or effectuate [the federal court's] judgments." § 2283. These exceptions, "though designed for

8

important purposes, 'are narrow and are not to be enlarged by loose statutory construction.'" <u>Smith v. Bayer Corp.</u>, 564 U.S. 299, 306 (2011) (alterations accepted) (quoting <u>Chick Kam Choo v. Exxon Corp.</u>, 486 U.S. 140, 156 (1988)). "[A]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." <u>Id.</u> (alterations accepted) (quotations omitted).

Defendants argue that RHM's RLUIPA claim is covered by the Anti-Injunction Act and that none of the three exceptions apply. <u>See generally</u> Dkt. No. 24; Dkt. No. 28. In response, RHM argues that the first exception of the Anti-Injunction Act applies.[6] RHM contends that Congress expressly authorized an injunction in this context because it limited RLUIPA to create only a federal right or remedy. Dkt. No. 26 ¶ 9. This is not so.

The Supreme Court has "prescribed a two-part analysis for determining whether a federal statute comes within the Anti-Injunction Act's 'expressly authorized' exception: (1) the statute 'must have created a specific and uniquely federal right or remedy, enforceable in a federal court of equity,' and (2) the federal right or remedy must be such that it can be 'given its intended scope only by the stay of a state court proceeding.'" <u>Mercer v. Sechan Realty, Inc.</u>, 569 F. App'x 652, 655 (11th Cir. 2014)

---

[6] RHM does not address the other two exceptions, and therefore, the Court does not consider them.

(quoting Mitchum v. Foster, 407 U.S. 225, 237–38 (1972)). The Eleventh Circuit's application of that analysis in Mercer informs the Court's decision today. In Mercer, the Eleventh Circuit held that a plaintiff's Fair Housing Act (FHA) claim was barred by the Anti-Injunction Act. Id. at 656. In applying the two-part analysis to determine whether the first exception applied, the court looked first to the FHA's language, which provided that an individual "may commence a[n] [FHA] action in an appropriate United States district court or State court." 42 U.S.C. § 3613(a)(1)(A) (emphasis added). Relying on that language, the court held that the FHA failed the first step of the expressly authorized analysis because it "is expressly enforceable in both state and federal courts." Mercer, 569 F. App'x at 655.

RLUIPA also fails the first step of the expressly authorized analysis. RLUIPA states: "A person may assert a violation of this chapter as a claim or defense in a judicial proceeding." § 2000cc-2 (emphasis added). According to that language, RLUIPA does not "create[] a specific or uniquely federal right or remedy." Mercer, 569 F. App'x at 655. And like the FHA, RLUIPA is "expressly enforceable in both state and federal courts." Id.

Still, RHM argues that the expressly authorized exception applies because the state court rejected RHM's attempt to assert RLUIPA claims during the Nuisance Proceeding. Dkt. No. 26. This argument fails. Again, Mercer is instructive. There, the Eleventh

Circuit considered the plaintiff's argument that the first exception applied because her FHA counterclaims were dismissed by the state court. <u>Mercer</u>, 569 F. App'x at 655. The Eleventh Circuit rejected that argument because: (1) the state court proceeding remained pending and thus the plaintiff "retained an avenue to challenge the [] order in state court," and (2) the plaintiff "could have, but elected not to, appeal" the state court's decision "as inconsistent with federal law." <u>Id.</u> The same governs here. Although the Glynn County Superior Court has issued a permanent injunction, RHM "retain[s] an avenue to challenge the [permanent injunction] in state court[s]," <u>id.</u>, as RHM has access to Georgia appellate courts.[7] Moreover, during any appeal of the permanent injunction, RHM can raise its RLUIPA arguments and directly challenge the trial judge's alleged rejection of those claims. <u>Id.</u>

Put plainly, RLUIPA does not create a "specific or uniquely federal right or remedy," as RLUIPA can be raised in either state or federal court. <u>Id.</u> Too, RHM has sufficient opportunity to raise its RLUIPA arguments during the state appellate process. Thus, the first exception to the Anti-Injunction Act does not apply. Further, because Plaintiff does not urge application of the other two exceptions, the default conclusion is that the Anti-Injunction Act

---

[7] Indeed, during oral argument, RHM's counsel conceded that he would likely file an appeal of the Glynn County Superior Court's injunction decision.

does, in fact, apply to RHM's RLUIPA claim. Therefore, Defendants'
motion to dismiss Count One of RHM's amended complaint is **GRANTED**.

## II.  RHM's remaining claims do not warrant <u>Younger</u> abstention at this stage.

In addition to its RLUIPA claim, RHM brings eight § 1983
claims alleging Defendants' conduct violated the First, Fourth,
Fifth, and Fourteenth Amendments. Dkt. No. 18 at 13–31. RHM's
§ 1983 claims fall within the "expressly authorized by Congress"
exception and are therefore not barred by the Anti-Injunction Act.
See <u>Mitchum</u>, 407 U.S. at 243 ("§ 1983 is an Act of Congress that
falls within the 'expressly authorized' exception of [the Anti-
Injunction Act]."). Instead, Defendants argue that RHM's § 1983
claims warrant abstention under <u>Younger v. Harris</u>. Dkt. No. 24 at
13.

"While [] federal courts have a virtually unflagging
obligation to hear the cases before them, the <u>Younger</u> doctrine
presents a narrow exception." <u>Leonard v. Ala. St. Bd. of Pharm.</u>,
61 F.4th 902, 907 (11th Cir. 2023) (internal quotation marks
omitted) (quoting <u>31 Foster Child. v. Bush</u>, 329 F.3d 1255, 1274
(11th Cir. 2003)). "<u>Younger</u> exemplifies one class of cases in which
federal-court abstention is required: When there is a parallel,
pending state[-court] proceeding, federal courts must refrain from
enjoining [it]." <u>Sprint Commmc'ns, Inc. v. Jacobs</u>, 571 U.S. 69, 72
(2013). But <u>Younger</u> abstention is not applicable to all state-

court proceedings, so the Court must first determine whether the Nuisance Proceeding is of the type subject to Younger.  To that end, "[t]he Supreme Court has recognized only three types of state proceedings where abstention [may be] warranted: (1) criminal prosecutions; (2) civil enforcement proceedings; and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' . . . judicial functions." Leonard, 61 F.4th at 907 (internal quotation marks omitted). Defendants argue the Nuisance Proceeding is a civil enforcement proceeding that warrants Younger abstention, and RHM does not argue otherwise. Therefore, the Court concludes that the Nuisance Proceeding is a civil enforcement proceeding to which Younger may apply.[8] Leonard, 61 F.4th at 907.

Following that threshold finding, the Court must make two additional determinations before abstaining under Younger. First, the Court must analyze the case using the three factors outlined in Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). Id. at 907–08. And second, the Court must determine whether an exception to the Younger doctrine exempts the case from abstention. Id. at 908 (citing Younger, 401 U.S. at

---

[8] The Court would reach this conclusion even if RHM had offered argument to the contrary. In Huffman v. Pursue, Ltd., the Supreme Court held that nuisance actions may warrant Younger abstention because they are, "in important respects[,] [] more akin to a criminal prosecution than are most civil cases." 420 U.S. 592, 604 (1975). That reasoning applies here.

13

45). If the Middlesex factors are satisfied and none of the Younger exceptions apply, the Court should abstain. See id. The Court begins its analysis with the Middlesex factors.

**A. The Middlesex Factors are satisfied.**

Analysis of the Middlesex factors requires the Court to answer three questions: (1) "is the state proceeding ongoing at the same time as the federal one?"; (2) "does the state proceeding implicate an important state interest?"; and (3) "does the state proceeding provide an adequate opportunity to raise the federal claim?" Leonard, 61 F.4th at 908 (internal quotation marks omitted). The parties agree, and so does the Court, that the Nuisance Proceeding satisfies the first Middlesex factor.[9] But RHM contests the second and third Middlesex factors.

As to the second Middlesex factor, RHM generally argues there is no important state interest at issue in the Nuisance Proceeding. When evaluating the state interest in Younger cases, courts must

_____

[9] The Court notes that after the parties filed their briefs (but before the Court's hearing on this motion), the Glynn County Superior Court issued a permanent injunction against RHM. See Dkt. No. 42-1. While, in some effects, the permanent injunction represents a terminus of the proceedings before the Glynn County Superior Court, the parties may still pursue alternate relief in Georgia appellate courts and, eventually, the United States Supreme Court. For purposes of the first Middlesex factor, the availability of state appellate review qualifies as an ongoing state court proceeding because a state's "trial-and-appeals process is treated as a unitary system." New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 369 (1989) ("NOPSI").

look not to "[a state's] interest in the *outcome* of the particular case" but to "the importance of the generic proceedings to the [s]tate." NOPSI, 491 U.S. at 369 (emphasis in original). That means the Court's inquiry is whether the City's interest in adjudicating nuisance suits is sufficiently important to the state, such that this Court must abstain. And the Court finds that it is.

"The importance of [a] state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature." Middlesex Cnty. Ethics Comm., 457 U.S. at 432 (citing Huffman v. Pursue, Ltd., 420 U.S. 592, 604-05 (1975)). In Huffman, state officials instituted a public nuisance action against the owner of a local cinema. 420 U.S. at 595. State officials alleged the cinema had been showing pornographic material that violated Ohio's public nuisance statute, which classified "obscene" films as a nuisance. Id. The Court was asked to determine whether the state had an important interest in litigating civil nuisance actions. Id. at 604. The Court held there was an important state interest in a civil nuisance proceeding because "it is more akin to a criminal prosecution than are most civil cases." Id. The Court noted that "the [s]tate [was] a party to the [civil] proceeding[] and the proceeding is both in aid of and closely related to criminal statutes [] prohibit[ing] the dissemination of obscene materials." Id. The Court concluded that "an offense to the [s]tate's interest

15

in the nuisance litigation is likely to be every bit as great as it would be were [it] a criminal proceedings." Id.

The Nuisance Proceeding, like those in Huffman, represents an important state interest. That is because the Nuisance Proceeding is "more akin to a criminal prosecution than are most civil cases." Id. Additionally, the City is a party to the Nuisance Proceedings. See Dkt. No. 24-1 at 1 (listing "The City of Brunswick, Georgia" as the "Plaintiff" in the Nuisance Proceeding). Finally, the injunctive relief sought is "both in aid of and closely related to" the City's Urban Camping Ordinance, which is a "criminal statute[]." Huffman, 420 U.S. at 604. Therefore, the Court finds that the second Middlesex factor is satisfied because the Nuisance Proceeding implicates an important state interest.

RHM next argues the third Middlesex factor is not satisfied because the Nuisance Proceeding does not provide an adequate forum for RHM to raise its constitutional claims. Not so. "Adequacy in this context is not about the quality of the state proceedings, but rather about 'whether the challenge can be raised in the pending state proceedings.'" Id. (alterations accepted) (quoting Moore v. Sims, 442 U.S. 415, 425 (1979)). "Simply put, generalized arguments about the inadequacy, inconvenience, or complexity of proceedings before a state tribunal will not do." Id. at 909 (citations omitted). "Instead, what matters is whether [RHM] is procedurally prevented from raising [its] constitutional claims in

16

the state courts, from which a certiorari petition can be filed seeking review on the merits in the United States Supreme Court." Pompey v. Broward Cnty., 95 F.3d 1543, 1551 (11th Cir. 1996) (citations omitted). In the context of the third Middlesex factor, "[t]he burden is on [RHM] to show that the state forum is not adequate to adjudicate [its constitutional claims]." Leonard, 61 F.4th at 908 (emphasis added) (citing 31 Foster Child., 329 F.3d at 1279). Plaintiffs in other Younger cases often attempt to prove inadequacy by providing evidence of "state laws, rules, or procedures that [] allow a district court to evaluate whether the plaintiff's federal claims will effectively be shut out from the judicial system and cut off from effective review in the courts." Leonard, 61 F.4th at 909. But RHM has not done that here.

Instead, RHM argues that the Nuisance Proceeding presents an inadequate forum for adjudicating its constitutional claims because a Glynn County Superior Court Judge refused to hear evidence of those claims during the state court proceedings. Dkt. No. 26 ¶¶ 2-4. RHM claims that, at a state court hearing, RHM's counsel "attempted [] three times to present evidence of [a] violation of" rights under the First Amendment and RLUIPA. Id. ¶ 2. And according to RHM, the Superior Court Judge sustained Defendants' objections to presentation of that evidence because "nuisance constituted the only issue before that court." Id. ¶¶ 3-5. Defendants, relying on a transcript of that hearing they

17

submitted to the Court, offer a different narrative. Dkt. No. 41; see also Dkt. No. 41-1 (transcript of state court hearing). They aver that they offered no objection to presentation of that evidence, and likewise, the state court judge did not make any explicit ruling on whether he would consider evidence of alleged constitutional violations. Dkt. No. 41 at 5–6. Defendants therefore argue that RHM was able to raise claims of RLUIPA and First Amendment violations at the state court hearing and could have "offer[ed] as much evidence and argument on th[e] subject as it chose to present." Id. at 5.

Under either characterization, RHM has not met its burden in showing that the state court proceedings are inadequate to raise constitutional issues. Leonard, 61 F.4th at 909. "[W]hat matters is whether [RHM] is *procedurally* prevented from raising [its] constitutional claims in the state courts," Pompey, 95 F.3d at 1551 (emphasis added) (citations omitted), and RHM has produced no evidence—*i.e.*, state court orders, rules, or procedures—supporting such a conclusion. In fact, RHM was not only able to, but in fact did, raise its constitutional issues during the state court proceedings. Dkt. No. 41-1 at 169–70. That the state court ruled against the relevance of those arguments does not signify inadequacy under the third Middlesex factor, especially considering RHM can seek judicial review of the state trial court's rulings in state appellate courts. See NOPSI, 491 U.S. at 369 ("For

18

_Younger_ purposes, the State's trial-and-appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening in midprocess would demonstrate a lack of respect for the State as sovereign."); _Leonard_, 61 F.4th at 910 (finding plaintiff could not meet her burden under the third _Middlesex_ factor because "if [she] d[id] not prevail on her federal defenses before the Board, or even if the Board sidestep[ped] ruling on [her] federal claims altogether, she [could] still seek judicial review in the Alabama state courts."). Finally, RHM will have the opportunity, after exhausting its appeals in the state judicial system, to seek certiorari review of the state court's ruling by the United States Supreme Court. _See Pompey_, 95 F.3d at 1551.

So "does the state proceeding provide [RHM] an adequate opportunity to raise [its constitutional] claim[s]?" _Leonard_, 61 F.4th at 908 (internal quotation marks omitted). Yes, according to clear precedent. RHM has not shown that its constitutional claims will be "shut out from the judicial system and cut off from effective review in the courts." _Leonard_, 61 F.4th at 902. Therefore, the third _Middlesex_ factor is satisfied. Having found all three _Middlesex_ factors met, the Court now turns to the _Younger_ exceptions. As noted at the outset, Defendants must run a legal gauntlet to succeed in their quest for the exceedingly rare application of _Younger_ abstention. They are part way there, having

prevailed with respect to the Middlesex factors. But as explained below, the exceptions to the Younger doctrine knock them off track.

**B. RHM's allegations are sufficient to show the bad-faith exception to Younger applies at this stage.**

"Because all three Middlesex factors are satisfied, Younger abstention is warranted unless [RHM] can show that one of the exceptions applies." Leonard, 61 F.4th at 911. There are "two broad categories" of exceptions that may overcome Younger abstention: "proceedings instituted in bad faith and proceedings founded on flagrantly and patently unconstitutional laws." Id. (internal quotation marks omitted). RHM argues only that the bad-faith exception applies in this case.

As an initial matter, RHM, as the Plaintiff, bears the burden of showing that the bad-faith exception applies. Id. at 911-913. And because this issue arises in the motion to dismiss context, the Court looks to RHM's allegations to determine whether RHM has met that burden by pleading bad faith.[10] See Twombly, 550 U.S. at 555-56.

---

[10] To be clear, the vast majority of cases decided under Younger are decided at the preliminary injunction stage after parties have had the opportunity to complete discovery. See, e.g., Helfant v. Kugler, 484 U.S. 117, 123-26 (analyzing the bad-faith exception based on evidence produced at the motion for preliminary injunction stage). That is not the case here. RHM has yet to move for a preliminary injunction, and instead, Defendants have moved to dismiss the amended complaint. Discovery has not been completed—or even begun. Therefore, the Court can rely only on RHM's allegations set forth in its Amended Complaint.

Bad faith can be shown in two ways. First, by showing "the [state court] charges were 'brought without a reasonable expectation of obtaining a valid [judgment].'" Leonard, 61 F.4th at 911 (quoting Redner v. Citrus Cnty., 919 F.2d 646, 650 (11th Cir. 1990)). RHM does not make this argument. Instead, RHM argues for bad faith via the second method, asserting that the Nuisance Proceeding was instituted "in bad faith for the purpose of retaliating for or deterring the exercise of constitutionally protected rights." Wilson v. Thompson, 593 F.2d 1375, 1383 (5th Cir. 1979). To satisfy its burden under this method, RHM must make two showings: (1) "that the conduct allegedly retaliated against or sought to be deterred was constitutionally protected," and (2) that the institution of the Nuisance Proceeding "was motivated at least in part by a purpose to retaliate for or to deter that conduct." Id. at 1387. If RHM "successfully discharge[s] [its] burden of proof on both of these issues," the Court should then consider whether Defendants have shown "by a preponderance of the evidence" that the Nuisance Proceeding would have been instituted "even had the impermissible purpose not been considered." Id. The three determinations required under this analysis are fact-intensive. See id. ("The question of bad faith under [this] test . . . is largely a question of fact."). And to reiterate, because the Court is deciding this issue at the motion to dismiss stage, the allegations in RHM's complaint must be accepted as true at

this point. See Twombly, 550 U.S. at 555-56. The Court finds that RHM has discharged its initial burden of alleging bad faith, and Defendants have produced no evidence to refute that showing. (In fairness, they have not yet had the chance to do so. Discovery will provide that opportunity.)

To begin, the Court must identify RHM's constitutionally protected rights against which Defendants allegedly retaliated. In that regard, RHM alleges that Defendants retaliated against RHM's decision to offer a temporary emergency shelter to Brunswick's unhoused population. Dkt. No. 18 ¶¶ 24-27. And according to the Amended Complaint, serving the needy—including those without homes—is a tenet of RHM's religious beliefs. Id. ¶ 26. Essentially, RHM argues that offering a temporary emergency shelter to unhoused individuals was an exercise of RHM's First Amendment rights. See id. ¶ 57 ("Defendants have deprived and continue to deprive RHM of its rights to the free exercise of religion . . . by imposing and implementing land use regulations that placed a substantial burden on RHM's religious rights."). RHM's allegations are sufficient to allege that its operation of a temporary emergency shelter is protected by the Free Exercise Clause. "Clearly freedom of belief protected by the Free Exercise Clause embraces freedom to profess or *practice* that belief." McDaniel v. Paty, 435 U.S. 618, 631 (1978) (emphasis added); see also Kennedy v. Bremerton Sch. Dist., 597 U.S. 507, 523 (2022) ("[T]he Free Exercise Clause protects

22

religious exercises."). RHM alleges providing a shelter to needy individuals is a tenet of its Christian religion and, therefore, institution of the temporary emergency shelter is a practice of such religion. And practice of RHM's religion is constitutionally protected by the Free Exercise Clause. <u>McDaniel</u>, 435 U.S. at 631. Therefore, RHM has satisfied its burden under the first prong of the Court's analysis because it has sufficiently alleged that "the conduct allegedly retaliated against or sought to be deterred was constitutionally protected." <u>Wilson</u>, 593 F.2d at 1387.

The Court also finds that RHM's allegations are sufficient to set forth that Defendants' institution of the Nuisance Proceedings "was motivated at least in part by a purpose to retaliate for or to deter that conduct." <u>Id.</u> To that end, RHM alleges that the City had "waged a relentless effort to close" another Christian homeless shelter, the Well, which predated RHM's shelter. Dkt. No. 18 ¶ 20. When the Well closed and RHM opened its shelter, RHM alleges that Defendants "trained its unlawful harassment" on closing RHM's shelter. <u>Id.</u> ¶ 25. Too, RHM alleges that the City "rejected RHM's permit applications to perform the necessary compliance work on the Church building while . . . continu[ing] to deny [RHM] access to the property." <u>Id.</u> ¶ 49. And when RHM sent the City a letter demanding re-entry to the Church, Defendants responded by initiating the Nuisance Proceedings. <u>Id.</u> ¶¶ 50, 52. At bottom, RHM alleges that Defendants knew of RHM's status as a religious

23

institution, and, according to RHM's allegations, this represented a part of Defendants' calculus in choosing to institute the Nuisance Proceedings. Id. ¶ 43 ("The Church lies in an area zoned as local commercial, which authorizes the use of the property as a Church."); id. ¶ 44 ("This property's continued use as a Church for decades and the tax exempt status recognized by the City and County governments codified the Church's status as a religious institution."). Considering all of RHM's allegations and drawing all reasonable inferences therefrom in favor of RHM as must be done at the motion to dismiss stage, the Court finds RHM has alleged that Defendants based their decision to institute the Nuisance Proceeding *at least in part* to deter or retaliate against RHM's exercise of its constitutionally protected rights to freely exercise its religion. Wilson, 593 F.2d at 1387. Therefore, RHM has satisfied its initial burden in showing the bad-faith exception applies. Id. It is worth stressing that the Court has not found bad faith. All the Court decides at this motion to dismiss stage is whether such bad faith has been alleged.

Because RHM has discharged its burden, the bad-faith exception applies unless Defendants can show "by a preponderance of the evidence" that the Nuisance Proceeding would have been instituted "even had the impermissible purpose not been considered." Id. Defendants have not done that yet. To be clear, Defendants have offered *no* evidence—not even affidavits—in support

24

of this burden, only argument. This is likely because this issue arises at the motion to dismiss stage before discovery has even begun.[11] The Court does not conclude that Defendants will fail to satisfy their burden after discovery has been completed. But at this point, the Court finds that Plaintiff has included sufficient allegations to proceed to discovery. Therefore, Defendants' motion to dismiss Plaintiff's § 1983 claims is **DENIED** at this time.

CONCLUSION

The Anti-Injunction Act applies to RHM's RLUIPA claim, and Plaintiff has not shown that any of the exceptions apply. Therefore, the Court **GRANTS** Defendants' motion to dismiss Count One of Plaintiff's Amended Complaint. Dkt. No. 24; Dkt. No. 28. With regard to Plaintiff's constitutional claims, Defendants have shown that the Middlesex factors are satisfied in this case. But Plaintiff's allegations are sufficient to state a claim satisfying the bad-faith exception to the Younger abstention doctrine. Younger does not require this Court to abstain from deciding this case at this time. Therefore, the Court **DENIES** Defendants' motion to dismiss Plaintiff's § 1983 constitutional claims. Dkt. No. 24; Dkt. No. 28.

---

[11] Indeed, discovery deadlines in this case have been stayed pending ruling on Defendants' motion to dismiss.  See Dkt. No. 16.

**SO ORDERED** this 23rd day of August, 2024.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA