# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

RESURRECTION HOUSE
MINISTRIES, INC.,

    Plaintiff,

    v.

CITY OF BRUNSWICK, et al.,

    Defendants.

2:23-CV-117

## ORDER

Before the Court are two motions for summary judgment, dkt. nos. 62, 64, the first filed by Defendant E. Neal Jump ("Sheriff Jump") and the second filed jointly by Defendants City of Brunswick, Mayor Cosby H. Johnson, City Commissioners Julie T. Martin, John A. Cason III, Falicia M. Harris, and Kendra L. Rolle, City Manager Regin M. McDuffie, Chief of Police Kevin M. Jones, and Building Official Christopher Jones (collectively "City Defendants"). Plaintiff Resurrection House Ministries, Inc. responded, dkt. nos. 73, 76, and Defendants replied, dkt. nos. 78, 79. For the reasons stated below, both motions are **GRANTED**.

## BACKGROUND

This case arises out of actions taken by city and county officials with respect to Plaintiff's operation of a homeless

shelter at St. John Missionary Baptist Church in Brunswick, Georgia.[1] Dkt. No. 18 ¶ 24. On April 22, 2023, after a different local homeless shelter, the Well, closed, Plaintiff entered into a six-month lease for space at 1804 G Street (the "G Street property") to provide shelter for the displaced homeless population. Dkt. No. 65 ¶¶ 1-3; Dkt. No. 76 ¶¶ 1-3; Dkt. No. 65-2. Days later, Defendant Building Official C. Jones received reports that the G Street property was being operated as an unpermitted homeless shelter. Dkt. No. 65-1 at 16:9-16. After arriving, Building Official Jones concluded that the condition of the building rose to the level of an emergency, as the structure did not appear to have power, and the roof appeared incomplete. Id. at 21:5-18, 42:16-43:9. Defendant Police Chief K. Jones ordered Plaintiff to vacate the G Street property by 3:00 p.m. the following afternoon—after some of the homeless population had

---

[1]At the summary judgment stage, the Court must view all facts in the light most favorable to the non-moving party and draw all inferences in its favor. Tolan v. Cotton, 572 U.S. 650, 657 (2014). The facts as described here are relevant facts supported by specific citations to record evidence. See Fed. R. Civ. P. 56(c)(1). A party's vague factual citations to the "entire record" or "transcripts," see, e.g., dkt. no. 73 at 4, do not comply with Rule 56(c)(1), and the Court is not required to "cull through the record searching for . . . evidence." Cazeau v. Wells Fargo Bank, N.A., No. 1:13-cv-260, 2014 WL 11444089, at *2 (N.D. Ga. May 29, 2014).

relocated to the G Street property. Dkt. No. 65 ¶¶ 5, 10; Dkt. No. 76 ¶¶ 5, 10; Dkt. No. 65-3 at 60:25-61:20.

The following day, Police Chief Jones and other Defendants returned to the G Street property, along with Sheriff Jump. Dkt. No. 65 ¶ 12; Dkt. No. 76 ¶ 12; Dkt. No. 65-2 ¶ 1-5. Building Official Jones and multiple officers then entered the property, allegedly without a warrant or court order. Dkt. No. 65 ¶¶ 19-20; Dkt. No. 76 ¶¶ 19-20; Dkt. No. 18 ¶ 28. Defendants then evicted the occupants and boarded up the G Street property. Dkt. No. 65 ¶¶ 27-29; Dkt. No. 76 ¶¶ 27-29

Two days after Defendants' entry, on April 26, 2023, Plaintiff constructed a "temporary shelter" outside of the boarded-up building. Dkt. No. 65 ¶¶ 31-32; Dkt. No. 76 ¶¶ 31-32; Dkt. No. 18 ¶ 38. Shortly thereafter, the City of Brunswick filed a nuisance action against Plaintiff in state court. Dkt. No. 65 ¶ 33; Dkt. No. 76 ¶ 33; Dkt. No. 24-1.

While Plaintiff allegedly continued making payments on the six-month lease for the G Street property, the lessor, Reverend Lyde, eventually refused to continue to accept payments. Dkt. No. 73-1 ¶ 7. Plaintiff purportedly maintains a verbal agreement with Reverend Lyde for an option to renew the lease upon the resolution of this litigation. Id. ¶ 9. Though the lease is not formally renewed, Plaintiff apparently continues to store items on the property for use in its ministry. Id. ¶ 8.

**PROCEDURAL HISTORY**

## I.    Superior Court Nuisance Action

The City of Brunswick filed a nuisance action against Plaintiff in Glynn County Superior Court on August 23, 2023. Dkt. No. 24-1 at 5, 8. On June 3, 2024, the Superior Court granted the City's request for an injunction and directed Plaintiff to prohibit access to the G Street property and surrounding areas. Dkt. No. 42-1 at 2. However, the court noted that the injunction did not prevent Plaintiff from allowing access to the building "for the sole purpose of rectifying any and all building code violations to bring the building and surrounding area into compliance with applicable city codes." Id. Though Plaintiff timely filed a notice of appeal to the Georgia Supreme Court, dkt. no. 65-9, the appeal was later dismissed on February 5, 2025, dkt. no. 65-10 at 1-2.

## II.    The Present Action

While the nuisance action was pending, Plaintiff filed a complaint in this Court on October 23, 2023. Dkt. No. 1. Later, in its amended complaint, Plaintiff brought claims for declaratory and injunctive relief for violation of the Religious Land Use and Institutionalized Person Act (Count I), violation of the First Amendment-Free Exercise of Religion (Count II), violation of the First Amendment-Free Speech (Count III), violation of the First Amendment-Freedom of Association (Count IV), violation of the First Amendment by the City of Brunswick's Code sections 16-95 and

4

23-25-5(b) (Counts V, VI), violation of the Fourth Amendment by those same code sections (Count VII), violation of the Fifth Amendment-Illegal Taking (Count VIII), and violation of the Fourteenth Amendment-Illegal Taking (Count IX). Dkt. No 18. After subsequent motions to dismiss, the Court dismissed Count I of Plaintiff's amended complaint. Dkt. No. 45 at 25.

On July 20, 2025, Defendants filed their motions for summary judgment. Dkt. Nos. 62, 64. After the motions were fully briefed, dkt. nos. 73, 78, 79, the Court held a motions hearing on October 6, 2025. Dkt. No. 84.

While the motions for summary judgment were pending, Plaintiff filed a motion to amend/correct the amended complaint. Dkt. No. 77. Therein, Plaintiff sought to add paragraphs alleging damages in the form of: rent paid, water bills paid, improvements and repairs, mental and emotional distress, humiliation and reputational damage, loss of privacy, nominal damages, punitive damages, and general monetary damages. Dkt. No. 77 ¶¶ 53A-53I. On September 29, 2025, the Magistrate Judge denied Plaintiff's motion, concluding that it was untimely and that Plaintiff lacked good cause under Federal Rule of Civil Procedure 16(b). Dkt. No. 83. Plaintiff filed objections to the Magistrate Judge's Order, and the undersigned overruled those objections. Dkt. Nos. 85, 89.

**LEGAL AUTHORITY**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248). The Court must view all facts in the light most favorable to the non-moving party and draw all inferences in its favor. Tolan, 572 U.S. at 657.

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The movant must show the Court that there is an absence of evidence to support the nonmovant's case. See id. at 325. If the movant discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257.

6

**DISCUSSION**

## I.    Standing

Sheriff Jump and the City Defendants all argue that Plaintiff lacks standing to claim the injunctive and declaratory relief sought in the remaining counts of the amended complaint. Dkt. No. 62 at 11–18; Dkt. No. 64 at 13–17. Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies. U.S. Const. art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (quoting Raines v. Byrd, 521 U.S. 811, 819 (1997)).

### A. Plaintiff's amended complaint and its representations to the Court demonstrate that it may seek only declaratory and injunctive relief.

First, the Court must identify the relief requested, as a plaintiff must establish standing separately for each form of relief sought. TransUnion LLC, 594 U.S. at 436. Here, the parties dispute whether Plaintiff may seek monetary damages based on the amended complaint. The City Defendants argue that Plaintiff is not entitled to seek monetary damages because (1) Plaintiff labeled each relevant count of its amended complaint as a claim for "declaratory and injunctive relief," (2) Plaintiff did not allege any monetary losses in the amended complaint, and (3) Plaintiff stated at oral argument that injunctive and declaratory relief

7

were "the two things we are seeking." Dkt. No. 64 at 13–15; Dkt. No. 50 at 21:5–18.

Plaintiff argues in response that 42 U.S.C. § 1983 provides for monetary damages, and that nominal damages are authorized even if not specifically pled. Dkt. No. 73 at 6. Plaintiff also argues that it provided evidence of monetary damages in its response to the motions for summary judgment in the form of Pastor Small's affidavit. Id.; see also Dkt. No. 73-1 ¶¶ 27–33 (alleging monetary damages in various forms). Plaintiff finally points to portions of the amended complaint that mention damages: an introductory paragraph stating in part that "[Plaintiff] brings this action against Defendants to compensate [Plaintiff] for damages and injuries suffered," dkt. no. 18 at 2, and the statement within the "Prayer for Relief" section requesting "damages in an amount determined by the enlightened conscience of an impartial jury," id. at 31.

The Court finds that Plaintiff's amended complaint, when combined with counsel's previous representations to the Court, limits Plaintiff's claims to prospective declaratory and injunctive relief. Dkt. No. 18. Though Plaintiff's amended complaint does allude to damages in some sections, such references were not connected to specific allegations of misconduct by Defendants. See id. at 2, 31. Additionally, in seven of the eight remaining counts of the amended complaint, Plaintiff states that

it "does not have an adequate remedy at law, because the constitutional and statutory violations it has suffered and continues to suffer cannot be adequately compensated by money damages." Id. ¶¶ 70, 80, 91, 104, 115, 124, 136.

In Count IX—the only count where Plaintiff does not allege an absence of an adequate remedy at law—there exist three other grounds which mandate the conclusion that Plaintiff is seeking only declaratory and injunctive relief in that count. First, the title of Count IX is "**Declaratory and Injunctive Relief** Under 42 U.S.C. § 1983 for Violation of the Fourteenth Amendment to the United States Constitution - Illegal Taking – All Defendants." Id. at 28 (emphasis added). Second, Plaintiff makes several references to the requested injunction in Count IX. For example, Plaintiff states that "**Unless the Court enjoins Defendants** from enforcing these ordinances and continuing to control the Church and its property," Plaintiff, and others associated with its ministry, will be subject to continuing violations of the Fifth and Fourteenth Amendments. Id. ¶¶ 150-51 (emphasis added). Plaintiff also states, "[A]s a result of the Defendants' violation of the Fourteenth Amendment, **RHM is entitled to injunctive relief** in the form of temporary restraining order and preliminary and permanent injunction enjoining enforcement of these ordinances to prevent Defendants from continuing to violate" the Fifth and Fourteenth Amendments. Id. ¶¶ 156-57 (emphasis added). Third, Plaintiff does

9

not allege monetary damages or request monetary relief in the body of Count IX or any other count of the amended complaint. <u>See generally</u> <u>id.</u>

Furthermore, Plaintiff's attempt to amend the complaint *after* Defendants' motions for summary judgment were filed indicates Plaintiff requested only declaratory and injunctive relief in the operative pleading.[2] Dkt. No. 77. The proposed amendment sought to add nine paragraphs to the amended complaint which would specify monetary damages ranging from water bills to mental and emotional distress to punitive damages, among other forms of monetary relief. <u>Id.</u> These requested amendments demonstrate not only that such allegations of monetary damages are lacking in the original complaint, but also that Plaintiff likely recognized that such allegations were necessary to survive Defendants' summary judgment motions.

More importantly, at the hearing on the motions to dismiss on June 5, 2024, in response to questioning by the Court on the form of relief sought, Plaintiff's counsel conceded that prospective declaratory and injunctive relief were the "two things we are

---

[2] The Magistrate Judge denied the motion to amend as untimely because it was filed nearly nine months after the deadline for such motions had passed, and Plaintiff had not made any attempt to demonstrate that good cause merited the amendments as required by Federal Rule of Civil Procedure 16(b). Dkt. No. 83 at 3–4. The Court later overruled Plaintiff's objection to the denial of that motion. Dkt. No. 89.

10

seeking." Dkt. No. 50 at 21:5–18 (transcript of hearing on motions to dismiss). Plaintiff is held to that representation, which was made before discovery began. Id.; Dkt. No. 43; Dkt. No. 27 (staying discovery pending the motion to dismiss). To hold otherwise would be unfair to Defendants who, due to Plaintiff's counsel's comments, were not on notice to seek discovery relating to monetary damages. At the time the statements were made, Plaintiff's counsel were officers of this Court, and the Court presumes their statements were true. See Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 808 (11th Cir. 2003) ("Because [defendant's] lawyers are officers of this court and subject to sanctions under Federal Rule of Civil Procedure 11 for making a representation to the court for an improper purpose . . . we give great deference to such representations and presume them to be true." (internal citations omitted)). Therefore, the Court concludes Plaintiff seeks only declaratory and injunctive relief in this matter.  The Court now turns to whether Plaintiff has established standing for each form of relief sought.

**B.  Plaintiff has not demonstrated a likelihood of experiencing future injury at the hands of Defendants sufficient to establish standing.**

To have standing in federal court, a plaintiff must show: "(1) 'injury-in-fact'; (2) 'a causal connection between the asserted injury-in-fact and the challenged action of the defendant'; and (3) 'that the injury will be redressed by a

11

favorable decision.'" Houston v. Marod Supermkts., Inc., 733 F.3d 1323, 1328 (11th Cir. 2013) (quoting Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001)); see also Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). Failure to demonstrate any one of these requirements results in a lack of standing. Koziara v. City of Casselberry, 392 F.3d 1302, 1304 (11th Cir. 2004).

As to the injury requirement: "An injury in fact consists of 'an invasion of a legally protected interest' that is both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Trichell v. Midland Credit Mgmt., Inc., 964 F.3d 990, 996 (11th Cir. 2020) (quoting Defs. of Wildlife, 504 U.S. at 560) (alterations in original). Without standing, the constitutional "case" or "controversy" requirement is not satisfied, and the case must be dismissed. Id.

When a plaintiff seeks prospective declaratory and injunctive relief like Plaintiff seeks here, it must demonstrate (1) the likelihood of future injury, (2) the likelihood of suffering that injury at the hands of the defendant, and (3) the likelihood that the requested relief will prevent the occurrence of such injury. Cone Corp. v. Fla. Dep't of Transp., 921 F.2d. 1190, 1203-04 (11th Cir. 1991). To do this, "[t]he plaintiff must present 'specific, concrete facts' showing that the challenged conduct will result in a 'demonstrable, particularized injury' to the plaintiff," thus ensuring that the plaintiff tangibly and personally benefits from

12

the court's action. Id. (quoting Warth v. Seldin, 422 U.S. 490, 508 (1975)).

Sheriff Jump contends that Plaintiff does not have standing to bring its claims against him because Plaintiff "cannot show any further or ongoing involvement from Sheriff Jump" and because future involvement by Sheriff Jump would be speculative. Dkt. No. 62 at 12-13. Additionally, Sheriff Jump asserts that he is "not tasked with enforcing the subject City ordinances." Id. at 17-18. Finally, Sheriff Jump notes that, at the time the initial complaint was filed, Plaintiff did not have a property interest in the G Street property. Id. at 13. The City Defendants also assert that because Plaintiff did not have a possessory interest in the G Street property at the time it initiated the action, Plaintiff cannot demonstrate a real threat of future injury. Dkt. No. 64 at 16.

In response, Plaintiff alleges two injuries: (1) lack of access to the G Street property due to the state court injunction and (2) an injury to its ability to continue helping the homeless. Dkt. No. 73 at 4, 7-8. Plaintiff's response to the motions for summary judgment seeks to enjoin defendants from enforcing the state court order with respect to the G Street Property. Dkt. No. 74 at 7. It argues that if the state court injunction is lifted, Plaintiff would be able to renew its lease and begin using the building again. Id.; Dkt. No. 73-1 ¶ 9. Plaintiff also argues that

13

injury to its ministry through Defendants' unlawful conduct is imminent, as evidenced by Defendants' entering the building and boarding it up. Dkt. No. 73 at 7–8. Additionally, Plaintiff notes that the building permits it sought in order to comply with the injunction were denied. Id. at 4.

The first alleged injury identified by Plaintiff—a lack of access to the G Street Property due to the state court injunction—does not support standing. Id. at 7–8. As Defendants note, Plaintiff's lease on the G Street Property expired before this case was filed. See Dkt. No. 65-2 (Plaintiff's six-month lease beginning April 22, 2023); Dkt. No. 73-1 ¶ (Rev. Small declaration noting the "failure to formally renew the lease"); see also Dkt. No. 1 (complaint filed October 23, 2023, just over six months after the beginning of the lease term). An essential part of the required injury in fact showing is "an invasion of a legally protected interest." Trichell v. Midland Credit Mgmt., Inc., 964 F.3d 990, 996 (11th Cir. 2020) (quoting Defs. of Wildlife, 504 U.S. at 560). For an interest to be legally protected, it must "consist of obtaining compensation for, or preventing, the violation of a legally protected right." Bochese v. Town of Ponce Inlet, 405 F.3d 964, 980–81 (11th Cir. 2005) (quoting Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 772 (2000)).

14

Here, the injury alleged, lack of unrestricted access[3] to the G Street property, is not an injury in fact because Plaintiff has not provided evidence of a legally protected interest in broad access to the property at the time this case was filed. See Arcia v. Fla Sec'y of State, 772 F.3d. 1335, 1340 (11th Cir. 2014) ("Standing is determined at the time the plaintiff's complaint is filed."). By way of demonstrating its interest in the property, Plaintiff provided testimony that it had a "verbal option" to renew the lease. Dkt. No. 73 at 7; Dkt. No. 73-1 at 9–11. An option is a form of contract. See Restatement (Second) of Contracts § 25 (1981). Because Plaintiff did not provide any evidence of the terms of the option contract, there is insufficient evidence that it had a legal right of access to the property which would be affected by the state court injunction at the time the case was filed. Accordingly, Plaintiff's alleged lack of unrestricted access to the G Street property is not a sufficient injury-in-fact to support standing.

---

[3] The Court characterizes the alleged injury as a lack of *unrestricted* access to the property because the state court injunction—cited by Plaintiff as the reason for lack of access— dkt. no. 73 at 7, does not purport to restrict all forms of Plaintiff's access. Dkt. No. 42-1 at 2. Under the injunction, Plaintiff is allowed access to the G Street property "for the sole purpose of rectifying any and all building code violations to bring the building and surrounding area into compliance with applicable city codes." Id.

The second injury alleged by Plaintiff—that Defendants are likely to impede its ministry though future warrantless searches or eviction without due process—is not supported by concrete facts. Dkt. No. 73 at 4, 7–8. True, past wrongs can be evidence bearing on whether there is a real and immediate threat of future injury. See Lynch v. Baxley, 744 F.2d 1452, 1456 (11th Cir. 1984). However, without showing a likelihood that Plaintiff will again be injured in a similar way, Plaintiff does not have standing to seek an order enjoining Defendants to act lawfully. See City of L.A. v. Lyons, 461 U.S. 95, 105–09, 111 (1983).

In Lyons, the plaintiff had originally sought an injunction which would have prevented the use of control holds (also referred to as "chokeholds") by police except where a suspect appears to be threatening deadly force. Id. at 98. The Supreme Court held that, though the plaintiff-respondent was previously injured by a control hold, he did not have Article III standing to seek such injunctive relief without an additional showing that he was likely to suffer future injury. Id. at 105. The Court noted that, to establish an actual controversy, Lyons would have to allege that he was likely to have another encounter with the police and "either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act

16

in such manner." Id. at 105-06 (emphasis in original). This acknowledges two pathways for a plaintiff to demonstrate a likelihood of future harm: either the harm is (1) highly probable or (2) officially authorized. Id.; see also 31 Foster Child. v. Bush, 329 F.3d 1255, 1266 (11th Cir. 2003) ("[W]hen the threatened acts that will cause injury are authorized or part of a policy, it is significantly more likely that the injury will occur again.").

Here, though Plaintiff has alleged certain "policies" which may cause it future injury, Plaintiff has not provided evidence of any official, authorized policy which would allow the city to execute an unlawful warrantless search or violate the requirements of due process under the Fourteenth Amendment. See Dkt. No. 18 ¶¶ 32, 63, 73, 83, 94, 139, 152, 158 (alleging Defendants' adoption of certain unspecified legislation and policies authorizing Defendants to violate Plaintiff's rights); Dkt. No. 73 (providing no allegations of official policies permitting Defendants to act unlawfully). Therefore, the Court will analyze the likelihood of future unlawful conduct suffered by Plaintiff at the hand of Defendants to discern whether Plaintiff has standing to seek prospective relief.

It is well established in the Eleventh Circuit that probabilistic harms can form the basis of a prospective injunction. See Fla. State Conf. of N.A.A.C.P. v. Browning, 522 F.3d 1153, 1162 (11th Cir. 2008) ("[T]here is no per se rule denying standing

to prevent probabilistic injuries."); Arcia v. Fla. Sec'y of State, 772 F.3d 1335, 1341 (11th Cir. 2014) ("While the threatened future injury cannot be merely hypothetical or conjectural, probabilistic harm is enough." (citing Fla. State Conf. of N.C.A.A.C.P, 522 F.3d at 1162–63)). However, in cases where the Eleventh Circuit has found probabilistic harm likely enough to form the basis for an injunction, the parties seeking the injunction could not avoid exposure to the harm through their own deliberate choices. See JW ex rel. Tammy Williams v. Birmingham Bd. of Educ., 904 F.3d 1248, 1269 (11th Cir. 2018) (discussing previous cases where probabilistic harms warranted injunctive relief because those plaintiffs "could not avoid exposure to the conduct they challenged because their own behavior or situation, which drove the challenged conduct, was involuntary" (citing 31 Foster Child. v. Bush, 329 F.3d 1255 (11th Cir. 2003)); Church v. City of Huntsville, 30 F.3d 1332 (11th Cir. 1994)). Indeed, in Lyons, the Court noted that it would be speculative to assume that an officer would violate Lyons's constitutional rights when such a repeat encounter would depend on Lyons's own behavior:

> And it is surely no more than speculation to assert either that Lyons himself will again be involved in one of those unfortunate instances, or that he will be arrested in the future and provoke the use of a chokehold by resisting arrest, attempting to escape, or threatening deadly force or serious bodily injury.

18

461 U.S. at 108. Likewise, here, Plaintiff's asserted future injury is that it will be subject to warrantless searches and lack of due process stemming from alleged ordinance violations. Dkt. No. 73 at 7-8. This future scenario would require that Plaintiff deliberately and voluntarily obtain a lease on a building that again has serious deficiencies such as lack of utilities, and so again be subjected to the enforcement of public safety ordinances and exposed to the possibility of warrantless searches and violations of due process. Id. at 22 (acknowledging the lack of utilities at the G Street property by stating: "Defendants asserted that the safety concerns were that the building lacked utilities but fail to acknowledge that those sheltered by Plaintiff's ministry were worse off outside of the building than within").

Because the same future harm is unlikely, and future harm would necessarily be precipitated by Plaintiff's own voluntary conduct, Plaintiff's claims of probabilistic harm do not support standing to seek injunctive relief.[4] This conclusion is bolstered by the principle that citizens may not sue based on an "asserted right to have the Government act in accordance with the law." See Food & Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 381 (2024) (quoting Allen v. Wright, 468 U.S. 737, 754 (1984)). If the City of Brunswick violates Plaintiff's constitutional rights in

---

[4] Because the Court finds that Plaintiff lacks standing, the Court does not reach Defendants' other arguments for summary judgment.

19

the future, Plaintiff will perhaps have standing to seek damages to redress that injury. But today, the Court declines to assume, without sufficient factual allegations, that such injury is likely or imminent so as to confer standing to seek prospective relief.

### CONCLUSION

Because Plaintiff's alleged injuries do not satisfy the requirements for Article III standing, the motions for summary judgment filed by Sheriff Jump, dkt. no. 62, and the City Defendants, dkt. no. 64, are **GRANTED**.  The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 3rd day of March, 2026.

_____

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA